J-S16004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GERARDO VALDVIA | : | |
| | : | |
| Appellant | : | No. 1310 EDA 2023 |

Appeal from the PCRA Order Entered April 20, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0005909-2018

BEFORE: STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.: **FILED DECEMBER 4, 2024**

Appellant, Gerardo Valdvia, appeals from the April 20, 2023 order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. We affirm.

On September 3, 2019, after a non-jury trial, Appellant was convicted of corruption of minors ("COM"), endangering the welfare of a child ("EWOC"), and harassment. The victim, L.W., was Appellant's niece. She was 11 to 12 years old at the time of the alleged offenses. On November 15, 2019, the trial court imposed an aggregate sentence of two to five years of incarceration followed by two years of probation. On February 24, 2022, this Court vacated the judgment of sentence as to COM but otherwise affirmed. There was no

_____

[*] Former Justice specially assigned to the Superior Court.

remand for resentencing because the sentence for COM ran concurrently with the sentence for EWOC. Appellant, represented by counsel, filed this timely first PCRA petition on August 8, 2022. The Commonwealth filed its motion to dismiss on January 18, 2023. On March 9, 2023, the PCRA court issued its notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant did not respond. The PCRA court entered the order on appeal on April 20, 2023.

Appellant presents three assertions of error:

1. The PCRA court erred when it denied, as a matter of law, Appellant's claim that defense counsel was ineffective for failing to object at sentencing when the sentencing judge revealed that he had known the victim's father for twenty years.

2. The PCRA court erred when it denied, as a matter of law, Appellant's claim that sentencing counsel was ineffective for not filing post-sentence motions when the court deviated from the sentencing guidelines and did not adequately place on the record in front of [Appellant] the factual and legal basis for such deviation.

3. PCRA counsel was ineffective for failing to provide signed certifications from potential witnesses identified in the amended PCRA petition who were willing and able to testify.

Appellant's Brief at 6.

On review of an order dismissing a PCRA petition, we must determine whether the record supports the PCRA court's findings of fact and whether the PCRA court committed an error of law. *Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018), *affirmed*, 226 A.3d 995 (Pa. 2020). We review the record in the light most favorable to the prevailing party and grant

deference to the PCRA court's findings of fact, not disturbing those findings unless we find no support in the record. *Id.* We review the PCRA court's legal conclusions *de novo*. *Id.* Dismissal without a hearing is appropriate where the PCRA court is satisfied that the petition presents no genuine issues of material fact and that the petitioner is not entitled to relief. Pa.R.Crim.P. 907(1).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must plead and prove by a preponderance of the evidence that counsel's error "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). The petitioner must establish that (1) the underlying issue is of arguable merit; (2) that counsel had no reasonable strategic basis in support of the challenged action or inaction; and (3) that but for counsel's error, the outcome of the underlying proceeding would have been different. *Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014). The petitioner's failure to establish any one of these three prongs is fatal to the claim. *Id.* at 312.

Appellant's first assertion of error addresses his sentencing counsel's ineffectiveness for failing to ask the sentencing judge to recuse. In his petition, Appellant alleged that the trial judge and the victim's father were political acquaintances. The sentencing judge divulged that fact when the

victim's father, R.W., took the stand to testify to the impact of Appellant's crime on the victim and the victim's family:

> For the record, I know [R.W.]. I've known [R.W.] through the years as a public servant in the City of Philadelphia. I just wanted that noted for the record.
>
> I was not aware at the time of trial that he was the victim's father, but I'm now made aware that he's the victim's father. I've known [R.W.] over—probably going on 20 years now as a public servant for the City of Philadelphia.

N.T. Sentencing, 11/15/19, at 10-11. R.W. concluded his remarks by asking that Appellant "suffer the consequences for his actions." *Id.* at 12. Appellant's counsel did not ask any questions of the victims' father. *Id.* at 12.

According to the PCRA petition, the trial judge was running for statewide office during the trial with the political support of the victim's father. PCRA Petition, 8/8/22, at 5-6 (pagination ours). Thus, Appellant claims sentencing counsel was ineffective for failing to move for a new trial before a different judge. *Id.* at 6. But the petition made a concession that is fatal to the request for a new trial: "The Honorable Trial Judge did not learn of the potential conflict until the complainant witness' father appeared and testified before him at sentencing." *Id.* at 6. We discern no error in the PCRA court's denial of a new trial, because, according to the PCRA petition itself, the identity of the victim's father was unknown to the trial court until after trial. Sentencing counsel had no basis for requesting a new trial before a different judge.

But the PCRA petition also alleged a slightly different claim—that sentencing counsel should have requested recusal before the court proceeded

- 4 -

to sentencing. *Id.* Had counsel done so, Appellant argues, his sentencing proceeding would have been unstained by the appearance of impropriety. Appellant argues that the appearance of justice was not satisfied here, given that the trial court imposed a sentence above the guideline range after the disclosure of the relationship between the victim's father and the sentencing judge.

This argument fails because Appellant has not argued the three prongs of the ineffective assistance of counsel analysis. *See Commonwealth v. Williams*, 899 A.2d 1060, 1063 (Pa.2006) ("Failure to address any prong of the test will defeat an ineffectiveness claim."). Instead, Appellant treats his recusal argument as if this case were on direct appeal.

He cites *Reilly v. Southeastern Pennsylvania Transp. Auth.*, 479 A.2d 973 (Pa. Super. 1984), wherein this Court wrote as follows:

> Canon 3 C[1] sets forth an objective standard: no matter how the judge himself feels, if 'his impartiality might reasonably be questioned,' recusal is required. The question, therefore, is not how the judge appraises the situation but how a detached observer—the common law's 'reasonable man'—would appraise it. If a reasonable observer would conclude that the situation is such that the judge's 'impartiality might reasonably be questioned,' the judge should recuse himself. The party claiming that the judge should have recused himself is therefore under no obligation to show any actual prejudice—to show, that is, that subjectively, or in fact, the judge was not impartial; it is enough to show that a

---

[1] The Code of Judicial Conduct has since been revised; the analogue of former Canon 3C appears at Rule 2.11 of the current Pennsylvania Code of Judicial Conduct.

- 5 -

reasonable observer might have questioned the judge's impartiality.

*Id.* at 980. Appellant fails to acknowledge that this Court's opinion in *Reilly* was not issued on collateral review. Rather, it was a direct appeal.

Further, it seems that, to the extent Appellant attempts to address the three prongs of ineffective assistance of counsel analysis, he is arguing that prejudice occurred here because in the event of a recusal, his sentencing would have occurred before a different, unbiased judge. In other words, Appellant apparently argues that the success of the recusal motion, rather than the severity or lenience of the sentence, is the proper focus of our prejudice inquiry. Assuming without deciding that Appellant is correct in this regard, the claim fails as the record is deficient because Appellant failed to proffer any evidence that he would have presented at a PCRA hearing. The only fact of record presented is that the sentencing judge was acquainted with the victim's father for 20 years. The trial court acknowledged as much.

"The party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal." *Commonwealth v. Darush*, 459 A.2d 727, 731 (Pa. 1983). Appellant alleged in his petition that, at the time of trial and sentencing, the sentencing judge was running for statewide office with the political support of the victim's father. But Appellant offers no details as to how this fact rendered the trial court unfit to hand down his sentence. For example, the petition does not allege that the victim's father publicly endorsed

the sentencing judge, campaigned for him, or donated money to his campaign. The petition alleges only that the victim's father was a community activist and a democratic ward leader. A judge running for statewide office will, of necessity, have (or seek to have) the support of many political acquaintances. But Appellant has given us no legal or factual basis upon which to conclude that recusal is required anytime a family member of a judge's political acquaintance appears before him in court. Appellant's petition offers little more than innuendo. Our courts do not require recusal based on innuendo.

Given the foregoing, Appellant's reliance on **Darush** is misplaced. In **Darush**, the trial judge was a district attorney at the time the defendant committed his offenses. The defendant alleged that, prior to his election to the trial court, the judge said, "we want to get people [like the defendant] out of Potter County." **Darush**, 459 A2d at 732. The Supreme Court held that a new trial was unnecessary but remanded for resentencing before a different judge:

> [C]onsidering all the circumstances, especially the trial court's inability to affirmatively admit or deny making remarks from which a significant minority of the lay community could reasonably question the court's impartiality, we feel the largely unfettered sentencing discretion afforded a judge is better exercised by one without hint of animosity toward appellant.

**Id.**

**Darush** is distinguishable because it involved an allegation that the sentencing judge previously made public, derogatory statements about the defendant. And our Supreme Court's opinion in **Darush** is further

- 7 -

distinguishable because of the grounds for recusal it rejected. The ***Darush*** Court held that recusal was not necessary on grounds that the judge, as district attorney, had once prosecuted the defendant on unrelated charges. "Absent some showing of prejudgment or bias we will not assume a trial court would not be able to provide a defendant a fair trial based solely on prior prosecutorial participation." ***Id.*** at 731. In other words, the prior adversarial relationship between the defendant and the trial judge did not warrant recusal absent a specific showing of bias. Appellant's argument is flawed in the same way. He relies on the mere existence of a potentially adversarial relationship— here the trial court's political acquaintance with the victim's father—but makes no specific showing (nor does he explain how he might have made a specific showing had the PCRA court conducted a hearing) of the trial court's bias toward the defendant. For all of these reasons, Appellant's first argument fails.

With his second argument, Appellant addresses sentencing counsel's alleged ineffectiveness for failing to file post-sentence motions challenging the trial court's sentencing discretion. Appellant claims the trial court imposed a sentence above the aggravated guideline range without placing on the record its reasons for doing so. Once again, Appellant fails to address all three prongs of the ineffective assistance of counsel analysis. His argument in support of prejudice is a single conclusionary sentence because he lost the opportunity to have the sentencing judge reconsider his sentence and waived the issue on

direct appeal. Appellant's Brief at 20. The failure to develop an argument on prejudice is fatal to this claim of sentencing counsel's ineffectiveness. *Williams*, 899 A.2d at 1062

Appellant's argument ignores the record, and he never explains how the outcome of the sentencing proceeding might have been different had sentencing counsel requested reconsideration. Several witnesses, including the victim, testified at sentencing. Appellant's brother-in-law requested that Appellant be sentenced to the maximum amount of jail time "to reflect on the error of his ways." N.T. Sentencing, 11/15/19, at 9. R.W., the victim's father, as noted *supra*, testified to his disappointment in Appellant's betrayal of trust and asked that Appellant be made to "suffer the consequences for his actions." *Id.* at 12. The victim, after explaining the fear, shame, and depression resulting from the assaults and her decision to come forward, also asked that Appellant receive the maximum amount of jail time. *Id.* at 13-14.

The record reflects that the trial court requested and received a presentence investigation. *Id.* at 3. The trial court explained its sentence as follows:

> Just for the record, just so you're aware of it, I believe everything that little girl said. I did. You were grooming her for something else. You may not agree with me, but I believed everything she had to say. So understand that. You're not getting probation in this particular case, and I'm not letting you around that child or any other child for the next couple of years.

*Id.* at 17 (cleaned up). The trial court also noted that Appellant failed to take responsibility for his actions. *Id.* at 16-17. Indeed, Appellant continued to

deny that the assaults occurred: "I have two daughters. If I wanted to touch somebody, I would probably touch my daughters than to touch her [sic]. I never touched her. *Id.* at 15. The standard range sentence for Appellant was six to fourteen months (*id.* at 4), but the trial court imposed an aggregate two to five years of incarceration. *Id.* at 18. Because Appellant fails to explain how he was prejudiced by counsel's failure to request reconsideration, Appellant's second assertion of error does not merit relief.

With his final argument, Appellant claims PCRA counsel[2] was ineffective for failing to provide signed certifications from a witness, E.V., who was willing to testify on his behalf in support of his petition. This argument stems from an allegation in his petition that trial counsel was ineffective for failing to call E.V as a witness at trial. According to the petition, E.V. was an eyewitness who would have testified that the victim's testimony was not truthful.

The ineffective assistance of PCRA counsel can be raised at the first opportunity to do so, even if on direct appeal. *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021). "Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness, however, where there are material facts at issue concerning claims challenging counsel's stewardship

---

[2] Appellant is represented by substitute PCRA counsel on this appeal.

and relief is not plainly unavailable as a matter of law, the remand should be afforded." *Id.* at 402 (internal citations and punctuation omitted).

To establish ineffective assistance for the failure to present a witness a PCRA petitioner must establish that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Treiber*, 121 A.3d 435, 498 (Pa. 2015).

Presently, Appellant repeats the same boilerplate assertions that Appellant asserted in his petition. Appellant's brief repeats the petition's assertions that E.V. was an eyewitness who was willing and able to testify that she would have contradicted some of the victim's testimony. In its Pa.R.A.P. 1925(a) opinion the PCRA court explains that E.V. is Appellant's daughter, and that her testimony would have been cumulative and corroborative of Appellant's. PCRA Court Opinion, 7/27/23, at 12-14.

The PCRA court summarized the pertinent facts:

> At trial, the victim testified that she went to Dave & Busters, an arcade, with Appellant and his daughters. On the way home, Appellant dropped his daughters off before taking the victim to her grandmother's house. Once no one else was in the car, the victim pretended to sleep because she 'knew he was going to try to do something with [her] because [they] were alone.' Appellant then asked the victim to sit in the front seat. The victim complied because she was scared. Once in the front seat, Appellant asked the victim if she 'wanted to do anything,' which she understood to mean something sexual. The victim told him no, and he said that

- 11 -

he would find someone else to 'do something' with him instead. Appellant then dropped the victim off at her grandmother's house.

[…]   As described in his amended petition, the import of [E.V.'s] testimony is that it purportedly rebuts the testimony of the victim and mirrors the testimony provided by Appellant at trial.   Appellant testified at trial that when Appellant drove the victim home from Dave & Buster's, Appellant dropped the victim off at her grandmother's house first, never asked the victim to sit in the front seat of the car because E.V. was in the front seat, and he never asked the victim to touch him in an appropriate way.

PCRA Court Opinion, 7/7/23, at 12-13.

Assuming without deciding that Appellant's summary of the substance constituted a sufficient proffer under § 9545(d)(1),[3] we agree with the PCRA court's conclusion that Appellant has not provided any grounds for concluding that original PCRA counsel's alleged ineffectiveness was prejudicial.  Appellant fails to explain how E.V.'s testimony, if believed, would have sufficiently negated any element of Appellant's EWOC conviction under 18 Pa.C.S.A. § 4304.[4]

As noted above, the alleged offenses took place when the victim was 11 and 12 years old.  The previous panel of this Court summarized the pertinent facts:

_____

[3]  Section 9545(d) governs the certification of witnesses who would appear at a requested PCRA hearing.  42 Pa.C.S.A. § 9545(d).

[4]  Section 4304 provides:  "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support."  18 Pa.C.S.A. § 4304(a)(1).

L.W. testified that when she was a child, Appellant, who was then married to her aunt, sexually assaulted her on multiple occasions. L.W. would frequently spend time with Appellant's daughters, who are L.W.'s cousins, at Appellant's house. When L.W. was 11 years old, she was alone in Appellant's basement taking out her braids when Appellant went downstairs, approached L.W. from behind, and squeezed her buttocks. She testified that she did not tell anyone at the time because she was afraid her aunt would 'pin it on [her], not believe [her], and take [Appellant's] side.'

The following year, just after L.W.'s' 12th birthday, Appellant assaulted L.W. a second time. She testified that she went into her room when she was cleaning up and 'made [her] touch his penis over his clothes.' Immediately after Appellant forced L.W. to touch him, he handed L.W. cash. She testified that she did not know if the money was 'hush money or birthday money,' but it was strange to her as Appellant had never given her money before. L.W. did not come forward after this incident because she was 'scared of how people would think' about her.

*Commonwealth v. Valdvia*, 82 EDA 2020, unpublished memorandum, at *1-2 (Pa. Super. filed Aug. 24, 2021) (record citations omitted). These facts, in addition to the incident recounted by the PCRA court, summarize the evidence against Appellant, and they make clear that the victim alleged more than one incident of abuse. E.V.'s proposed testimony relates to only one incident and therefore would not entirely exonerate Appellant. Appellant is therefore obligated to explain why his EWOC conviction could not stand, even if E.V. testified and was deemed credible.[5] He did not do so, and for that reason his final argument fails.

_____

[5] We are cognizant that Appellant argued on direct appeal that the trial court's verdicts were inconsistent. In his direct appeal argument on that point,
*(Footnote Continued Next Page)*

Because we discern no reversible error under the applicable standard of review, we affirm the PCRA court's order.

Order affirmed.

Judge Lane did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/4/2024

---

Appellant inferred from the trial court's not guilty verdict on counts of indecent assault and unlawful contact with a minor that the trial court did not credit the victim's testimony regarding the alleged physical contact. In rejecting that argument on direct appeal, this court noted that we cannot infer findings of fact from an acquittal. *Id.* (citing *Commonwealth v. Moore*, 103 A.3d 1240, 1248 (Pa. 2014); *Commonwealth v. Yachymiak*, 505 A.2d 1024, 1026 (Pa. Super. 1986)). Similarly, on collateral review, Appellant cannot rely on inference to explain away the evidence uncontradicted by E.V.'s proposed testimony.